IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IMANI NEWCOMER, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:24-cv-00562-PX |
| MOM'S ORGANIC MARKET, INC., | * | |
| Defendant. | * | |

\*\*\*

## **MEMORANDUM OPINION**

Pending is Plaintiff Imani Newcomer ("Newcomer")'s motion for leave to file an amended complaint that Defendant MOM's Organic Market, Inc. ("MOM's") opposes as futile. ECF Nos. 24 & 25. The Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion to amend is granted in part and denied in part.

I.   **Background**

The lawsuit arises from MOM's alleged race, color and gender discrimination leveled against Newcomer. The Court has previously recited the operative facts in its prior decision at ECF No. 20 and incorporates those facts here. In that same decision, the Court dismissed without prejudice Newcomer's discrimination and hostile work environment claims, but allowed the retaliation claims to proceed. ECF Nos. 20 & 21. Newcomer now seeks to amend the Complaint to cure the previously identified pleading defects. ECF No. 24. For the following reasons, the Court allows amendment as to the hostile work environment claims but not as to the discrimination claims.

## II. Standard of Review

Amendment of pleadings should be granted liberally, unless the amended pleading is prejudicial, futile or brought in bad faith. *See* Fed. R. Civ. P. 15(a)(2); *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted). In assessing whether a claim is futile, the Court reviews the claim for sufficiency pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kerrigan v. Bd. of Educ. of Carroll Cnty.*, No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016). The Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The factual allegations must be enough to "raise a right to relief above the speculative level." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

MOM's principally contends that amendment should be denied because the claims still fail as a matter of law. The Court first considers the amended discrimination counts (Counts I and IV) and next turns to the hostile work environment counts (Counts II and V).

## III. Analysis

### A. Section 1981 and Title VII Discrimination (Counts I and IV)

The proposed amended complaint asserts the same theories of discrimination as before: that MOM's discriminated against Newcomer by (1) paying her less than White employees; (2)

failing to promote her at a comparable rate to White assistant managers (3) giving her less "desirable" work shifts and (4) terminating her. The Court considers each theory in turn.

### 1. Discriminatory Termination

First, the parties dispute whether the proposed amended complaint now makes plausible a theory of direct discrimination as to Newcomer's termination. A direct discrimination claim is made plausible where the "conduct or statements . . . reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)). For the claim to survive dismissal, a plaintiff must plead facts that show "some nexus . . . between the alleged discriminatory statements" and the adverse action, here the plaintiff's termination. *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir. 1995) (quotation marks omitted), *rev'd on other grounds by* 517 U.S. 308 (1996).

Importantly, "to satisfy the nexus requirement in a direct evidence case, the person making the statement must hold the status of 'decisionmaker' within the defendant employer's organization." *U.S. E.E.O.C. v. CTI Glob. Sols., Inc.*, 815 F. Supp. 2d 897, 907 (D. Md. 2011). A "decisionmaker" includes agents of the employer who have "principal responsibility" over the adverse employment decision. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 289 (4th Cir. 2004), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Newcomer argues that the proposed amendment makes clear that Assistant General Manager Stacie May ("May")—the alleged direct discriminator—was also involved in the decision to terminate Newcomer. The Court disagrees. Although May was present for the meeting in which Regional Operations Manager Lara McCallum and Human Resources Director Patricia Kotler

informed Newcomer that she would be fired if she did not move to the Rockville store, May's mere presence does not make plausible her involvement in the termination decision. *Cf. Moody v. Bd. of Educ. of Wicomico Cnty.*, No. CV SAG-25-00642, 2025 WL 3119201, at *11 (D. Md. Nov. 7, 2025) (cat's paw theory). Nor is such theory plausible when considering that Newcomer and May were both Assistant General Managers which suggests that May had no supervisory authority over Newcomer. ECF No. 24-2 ¶¶ 24, 71. Indeed, even the proposed pleading avers that Newcomer's termination was the product of a Human Resources' "investigation" and an "anonymous employee survey," not because of any decision May made. *Id.* ¶¶ 137–52. Because no facts make plausible that May had been a decisionmaker in terminating Newcomer, the direct theory of discrimination fails.

Next, under the *McDonnell Douglas* burden shifting framework, the discrimination claim will survive if some facts make plausible that (1) the plaintiff belonged to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees who were not a member of her protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff makes that prima facie showing, the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for its conduct, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and then the burden shifts back to the plaintiff to show that the stated rationale is a pretext for discrimination. *See Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 742 (D. Md. 2021) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001)). Although at the pleading stage the plaintiff need not plead every element of the prima facie case, she must aver some facts that give rise to the inference that she was treated adversely on account of a protected characteristic. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). *See also*

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

When viewing the proposed amended complaint most favorably to Newcomer, no facts give rise to the plausible inference that she was fired because of her race. To be sure, the amended pleading makes plausible that Newcomer had been terminated because she had reported May's racist behaviors. But complaining about a coworker's discriminatory animus, prompting quick termination, is actionable in retaliation. *Cf. U.S. E.E.O.C.*, 815 F. Supp. 2d at 907. In this respect, the additional allegations regarding Newcomer's complaints having created an "Us vs. Them" and "toxic" work environment further support the retaliation claims. ECF No. 24-2 ¶¶ 138–42. But none make plausible that Newcomer had been fired on account of her race. Thus, this liability theory cannot proceed.

### 2.     **Disparate Pay**

Turning next to the disparate pay liability theory, the proposed amended complaint largely rehashes the same allegations as before, *compare* ECF No. 1 ¶¶ 252–57, 276–82 *to* ECF No. 24-2 ¶¶ 152–58, 175–80. Accordingly, the claim still fails to make plausible that Newcomer had been paid less than any White employee who was similarly situated in all material respects. *See Spencer v. Virginia State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019), *as amended* (Mar. 26, 2019). Although no "bright line" test exists for what makes employees "similarly situated," factors such as similar job description, employment standards, supervisory structure, and comparable experience or education are considered. *Id.* (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)).

At best, the proposed pleading avers that Newcomer was paid less than Jessica Ladow. Ladow, however, allegedly was paid more than Newcomer as of 2018, but this pay disparity is

beyond the applicable limitations period for suit to proceed. *See* ECF No. 20 at 10 n.2. The proposed amendment otherwise avers generally that Newcomer made less than other Assistant General Managers, and that she asked for a salary to "bring her in line" with those employees. ECF No. 24-2 ¶ 73–74. But no other facts make plausible that Newcomer was in all material respects the same as the other Assistant General Managers such that discriminatory animus explains the difference in pay. Lastly, to the extent Newcomer relies on May as a suitable comparator, the Amended Complaint avers that May had considerably more experience than Newcomer, which itself supports a legitimate non-discriminatory reason for the pay differential. ECF No. 24-2 ¶ 76. *See also Bio*, 424 F.3d at 597 ("This substantial gap in experience precludes a finding that the two were similarly situated."). This liability theory also fails.

### 3. Non-Promotion

Next, Newcomer alleges discrimination based on MOM's failure to timely promote her to Assistant General Manager. To make plausible a failure-to-promote theory of discrimination, some facts must show that the plaintiff "(1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995). The problem for Newcomer is that she ultimately *received* the promotion, just not as quickly as others. But this difference alone does not make plausible a failure to promote claim. Thus, this liability theory still fails.

### 4. Assigned Less Desirable Shifts

As with the original Complaint, Newcomer still presses that she was the victim of race discrimination because her supervisor Kyle Young assigned only her to work "the undesirable 3:00 am to 11:00 am or 4:00 am to 12:00 am shifts." ECF No. 24-2 ¶¶ 95–97. The Court assumes

purely for the sake of argument that assignment to an "undesirable" shift amounts to a sufficiently disadvantageous change to terms of employment to sustain the claim. *See Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025). That said, Young's decision to assign Newcomer these difficult shifts, following Newcomer's complaints about May, could support the retaliation claims. But no facts make plausible that Young assigned her these shifts because of her race or any other protected characteristic.

For these reasons, the Court DENIES Newcomer's motion to amend the discrimination claims, Counts I and IV. Those counts are dismissed with prejudice. The Court next turns to the hostile work environment claims.

**B. Hostile Work Environment in Violation of Section 1981 (Count II) and Title VII (Count V)**

Newcomer's amendments to the hostile work environment claims are limited but meaningful. The claim is now clearly premised on MOM's continued refusal to curb May's assaultive and derogatory behaviors aimed at Newcomer and other persons of color. For a hostile work environment claim to survive challenge, some facts must make plausible that the plaintiff (1) experienced unwelcome conduct, (2) that was imputable to the employer, (3) that the conduct was aimed at a protected characteristic, and (4) was sufficiently severe and pervasive to alter the conditions of her employment. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015). *See also Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Whether the work-place harassment was sufficiently severe or pervasive depends on the "totality of the circumstances," *Spriggs*, 242 F.3d at 184, taking into account "frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interfered with the employee's work performance," *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

The Court had originally dismissed this claim because no facts connected May's racially derogatory conduct generally to Newcomer more particularly, or made clear how May's assaultive acts were linked to Newcomer's race. ECF No. 20 at 15. The proposed amended complaint, however, makes plausible that May routinely spoke to people of color in a harsh, belittling manner in contrast to the cordiality May showed White employees. ECF No. 24-2 at ¶¶ 29–30. May was also hypercritical of Black employees and contemporaneously assaulted them. *Id.* ¶ 31–32. May often placed people of color in "chokeholds" but did not do so with White employees. *Id.* ¶ 32.

Newcomer, in turn, tried to speak with May about the litany of complaints received from Black and Brown employees, at which point May trained her sights on Newcomer. She called Newcomer one of the "ABWs" (angry Black women) who acted like a "pack of wolves" ready to attack May. ECF No. 24-2 ¶¶ 51–53. On several occasions, May also snuck up behind Newcomer and put her in a chokehold as she did with other people of color. And May did not stop even after Newcomer protested. *Id.* ¶¶ 31–34, 47–50, 58, 77–78. Nor did management curb May's abusive behavior once they learned about it. *Id.* ¶¶ 130–34 (Newcomer complaining to supervisor about May having placed her and other people of color in chokeholds and speaking to them in racially derogatory terms). *See also id.* ¶¶ 55, 91 (Newcomer complaining about May's conduct to management). As a result, Newcomer sought therapy to cope with the racially hostile and toxic work environment that May had created. *Id.* ¶ 70.

From this, the proposed amended complaint makes plausible that Newcomer had been "subjected to a hostile work environment on the basis of race" because MOM's allowed "May to assault her and other Black and Hispanic Employees and use racist and gendered slurs—while she

did not similarly assault White employees." *Id.* ¶¶ 160, 185. *See also Spriggs*, 242 F.3d at 185 (explaining that the n-word is a "pure anathema to African Americans" such that "no single act can more quickly alter the conditions of employment") (quoting *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *see also id.* (explaining that "[t]o suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme," in response to a supervisor calling a Black employee a "monkey"). May's conduct was objectively hostile and race-directed, as made plausible by the other Black and Brown employees who found working with May to be uncomfortable, unacceptable, and in one case, so opprobrious that the employee asked not to work with May any longer. ECF No. 24-2 ¶¶ 28, 50. When viewing the facts most favorably to Newcomer, the hostile work environment claims will proceed.

## IV.   Conclusion

In sum, although the discrimination claims still fail, rendering amendment futile as to Counts I and IV, the proposed amended complaint does make plausible the hostile work environment claims at Counts II and V.[1] Accordingly, Counts II and V will proceed alongside the retaliation claims at Counts III and VI. The motion to amend is thus granted in part and denied in part.

A separate order follows.

|  |  |
|---|---|
| 2/5/2026 | /s/ |
| Date | Paula Xinis |
|  | United States District Judge |

---

[1] MOM's also briefly argues that permitting amendment would "prejudice" the company. ECF No. 25 at 13. The argument is unpersuasive. The proposed amendment does not "prejudice" MOM's simply because MOM's chose to oppose amendment. *Id.* Nor was Newcomer's motion to amend frivolous. Indeed, the Court had invited Newcomer to seek amendment if she wished and Newcomer successfully cured a few of the previously dismissed claims.